CASE NO. 21-5914

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                    *PLAINTIFF-APPELLEE*

v.

JOHN WILLIAM LAWSON                    *DEFENDANT-APPELLANT*

_____

On Appeal from the United States District Court for the
Eastern District of Kentucky, Lexinton Division

_____

**BRIEF FOR DEFENDANT-APPELLANT**
**JOHN WILLIAM LAWSON**

_____

Respectfully submitted,

*/s/ Philip C. Lawson, Esq.*
TRUE GUARNIERI AYER, LLP
124 Clinton Street
Frankfort, Kentucky 40601
Telephone:  (502) 605-9900
Fax:           (502) 605-9901
Email:        plawson@truelawky.com
*Counsel for Defendant-Appellant*

## CORPORATE DISCLOSURE STATEMENT

As provided in 6 Cir. R. 26.1(a) and Fed. R. App. P. 26.1(a), the defendant-appellant is not required to file a Corporate Disclosure Statement, as the defendant-appellant is not a party "to a civil or bankruptcy case, agency review proceeding, or original proceeding," nor is he a "corporate defendant in a criminal case."  As such, no corporate disclosure is included herein.

# TABLE OF CONTENTS

Corporate Disclosure Form ................................................................i

Table of Contents ...................................................................ii-iii

Table of Authorities .................................................................iv

Statement in Support of Oral Argument ...................................1

Statement of Jurisdiction................................................................1

Statement of Issues........................................................................1

Statement of the Case....................................................................2

Statement of Facts ...................................................................... 3-7

Summary of the Argument ...........................................................7

Argument ................................................................................ 7-25

I.      **TRAFFIC STOP NOT SUPPORTED BY REASONABLE
        SUSPICION**………………………………………...………….. 7-14

   A. *Standard of Review* ................................................... 7-8

   B. *Preservation Statement* ................................................8

   C. *Argument* ................................................................ 8-14

**II.**    **SUFFICIENT NEXUS NOT PRESENT TO SEARCH 4442 HAYS FORK LANE**………………………………………….....14-21

A. *Standard of Review* ................................................................ 14-15

B. *Preservation Statement* ...............................................................15

C. *Argument* ..................................................................................... 15-21

    **a.  *ANONYMOUS TIPS TO POLICE***……………………………..16-19

    **b.  *ONGOING CRIMINAL ACTIVITY***……………………………19-21

**III.**    **MINIMALLY SUFFICIENT NEXUS NOT PRESENT FOR GOOD FAITH EXCEPTION** …………………………………………..21-24

A. *Standard of Review* ...........................................................................21

B. *Preservation Statement* ................................................................22

C. *Argument* ................................................................................... 22-24

Conclusion   ...............................................................................................25

Certificate of Compliance with Rule 32(a)...............................................26

Certificate of Service ...............................................................................27

Designation of Relevant District Court Documents ...............................28

Appendix……………………………………………………………………29

# TABLE OF AUTHORITIES

## Case Law

*United States v. McCoy,* 905 F.3d 409 (6th Cir. 2018)…………………….7, 14, 21

*Gonzalez-Gilando v. State of Texas*, 306 S.W.3d 893 (Tx. App. 2010)………..8, 12

*United States v. Esquivel-Rios,* 725 F.3d. 1231 (10th Cir. 2013)……………….9, 12

*Willoughby v. Commonwealth,* 2014 WL 92253 (Ky. App. 2014)…………..11,12

*United States v. Woosley,* 361 F.3d 924 (6th Cir. 2004)………………...16, 19

*United States v. Tuttle,* 200 F.3d 892, 894 (6th Cir. 2000)……………………….20

*United States v. Sonagere,* 30 F.3d. 51 (6th Cir. 1994)…………………………..17

*United States v. McPhearson,* 269 F.3d. 518 (6th Cir. 2006)…………………19-21

*United States v. Reed,* 993 F.3d. 441 (6th Cir. 2021)…………………………22-24

## Statutes

18 U.S.C. § 3231 ...........................................................................................1
28 U.S.C. § 1291 ...........................................................................................1
21 U.S.C. § 841(a)(1).....................................................................................2
18 U.S.C. § 924(c)(1)(a) ................................................................................2
18 U.S.C. § 922(g) .........................................................................................2

## STATEMENT OF ORAL ARGUMENT

Appellant requests oral argument.  The issues on appeal are fact intensive. Furthermore, the issues involve numerous rules of law.  Therefore, oral argument will assist the Court in deciding the matter.

## STATEMENT OF JURISDICTION

The trial court obtained jurisdiction on June 18, 2020 with the filing of the Indictment against Appellant.  Indictment, RE 1, Page ID # 1-4.  18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States.").  On May 25, 2021, Appellant was convicted at a jury trial on all charges contained in the Indictment.  Verdict Form, RE 102, Page ID # 770-71.  On September 16, 2021, Appellant was sentenced to two-hundred and forty (240) months.  Final Judgment, RE 110, Page ID # 804-810. Pursuant to this timely appeal on September 22, 2021, jurisdiction vested with this Court.  Notice of Appeal, RE 111, Page ID # 811-12; *See also* 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.     Whether the officer's traffic stop was legally sufficient.

2.     Whether the search warrant affidavit established a sufficient nexus between the traffic stop and 4442 Hays Fork Lane.

3.     Whether the good faith exception applies to the search of 4442 Hays Fork Lane.

1

## STATEMENT OF THE CASE

On June 18, 2020, Appellant was indicted on four counts: (1) Unlawful distribution of five-hundred (500) grams or more of methamphetamine, in violation of 21 USC § 841(a)(1); (2) Unlawful distribution of methamphetamine, in violation of 21 USC § 841(a)(1); (3) Possession of a Firearm in furtherance of Drug Trafficking, in violation of 18 USC § 924(c); and, (4) Possession of a Firearm by a Convicted Felon, in violation of 18 USC § 922(g)(1). Indictment, RE 1, Page ID 1-5. On August 28, 2020, Appellant filed his first Motion to Suppress regarding the traffic stop. First Motion to Suppress, RE 21, Page ID 62-93. On October 23, 2020, the trial court denied the Motion. Opinion and Order, RE 40, Page ID 173-180.

On March 16, 2021, Appellant filed his Second Motion to Suppress challenging the search of 4442 Hays Fork Lane, Richmond, Kentucky. Second Motion to Suppress, RE 60, Page ID 230-247. The trial court denied this Motion. Opinion and Order, RE 73, Page ID 380-393. A jury convicted Appellant on all counts. Verdict Form, RE 102, Page ID 770-71. Appellant was sentenced to two-hundred and forty (240) months on September 16, 2021. Final Judgment, RE 110, Page ID 804-10. Appellant filed his Notice of Appeal on September 22, 2021. Notice of Appeal, RE 111, Page ID 811-12. This Brief followed.

## STATEMENT OF THE FACTS

On February 12, 2020, Officer Gerald Salyer ("Salyer") with the Richmond, Kentucky Police Department observed Appellant driving a Chevrolet Suburban at a gas station at 2:58 a.m.  Salyer Trial Transcript, RE 94, Page ID 546, Lines 8-18. Thereafter, Sayler followed Appellant's vehicle onto the roadway and ran the registration through a Kentucky database called "AVIS."  Salyer Suppression Hearing Transcript, RE 64, Page ID 263, Lines 19-22; *see also* Id. at Page ID 267-68.  In this case, AVIS returned a response of "verify for proof of insurance."  Id. at Page ID 263, Lines 19-22.  Thereafter, Salyer initiated a traffic stop.  Salyer Trial Transcript, RE 94, Page ID 547, Lines 21-25 through Page ID 548, Lines 1-2; *see also* Salyer Hearing Transcript, RE 64, Page ID 264, Lines 19-22 ("Upon contact with Mr. Lawson, I requested to see his insurance, which was the sole basis, reason for the traffic stop.").

After the traffic stop, Salyer asked to see Appellant's license, registration, and insurance.  Id. at Page ID 551, Lines 11-12.  While searching, another officer with a K-9 arrived on scene and performed an open-air search.  Salyer Hearing Transcript, RE 64, Page ID 266.  The K-9 alerted to the presence of drugs, leading to a vehicle search.  Day Two Trial Testimony, RE 120, Page ID 1015, Lines 23-25 through Page ID 1016, Lines 1.

During the vehicle search, officers found $23,000.00 in the front center console. Id. at Page ID 1018, Lines 14-17. Glass pipes were found in the backseat. Id. at Page ID 1018, Lines 23-25. A handgun was found in the front part of the vehicle. Day One Trial Transcript, RE 119, Page ID 910, Lines 10-12. Additionally, a utility bill addressed to 4442 Hays Fork Lane was found in the vehicle. Id. at 916, Lines 21-22. A pat-down search revealed Appellant was in possession of $550 cash, a few bullets, one pill, and one baggie. Id. at Page ID 905, Lines 23-25.

Later that morning, Salyer a submitted an affidavit to search 4442 Hays Fork Lane, the address on the utility bill. First Search Warrant Affidavit, RE 60-1, Page ID 237-241. The affidavit summarized the traffic stop. Id. at Page ID 238-39. Additionally, the affidavit referenced that the subject vehicle was registered to 4442 Hays Fork Lane. Id.

Furthermore, Salyer claimed he "spoke with Deputies of the Madison County Sheriff's Office and multiple detectives with the KSP-AHIDTA Madison County Drug Task Force" who stated that "Lawson was known to transport 15 to 20 lbs of Methamphetamine." Id. These officers stated that "they had received multiple complaints that [Appellant] stores large amounts of cash and methamphetamine inside his residence at 4442 Hays Fork Lane; specifically, in hidden compartments throughout the house and even buried in the yard." Id.

4

The source of this information was an anonymous tip received by another officer, Madison County Sheriff's Deputy Quiles, that occurred on ***October 21, 2019***. Id.  According to Deputy Quiles:

> "On ***10/21/19*** at 23:10 I stopped XXXXXX on a traffic stop at 764 Forest Lane.  Upon my arrival at the jail, ***XXXXXX advised me he would talk if I were to help him out on the warrant***.  I advised XXXXXX that I cannot because of his warrant. XXXXXX proceeded to advise me that he knows a big drug dealer named John Lawson and lives on Hays Fork Lane.  He stated John Lawson has pounds of meth at his house and he has a lot of money.  XXXXXX also stated that inside of his residence there's hidden shelves with money and guns.  I asked XXXXXX if he's ever seen it and he said, 'yes, I have seen both the money and drugs.'  He also proceeded to tell me that Lawson is involved with more known drug dealers in the area one of them named XXXXXX.  He also stated that Lawson goes down to Atlanta and other cities and picks up 15 pounds of meth and other drugs."

> Id. (emphasis added).

Lastly, Salyer referenced Appellant's prior felony drug conviction and his pending theft charges in Madison Circuit Court.  Id.  Based upon the above information, a state court judge granted a search warrant for 4442 Hays Fork Lane. First Search Warrant, RE 60-3, Page ID 244-45.   Shortly thereaftert, law enforcement began the search.

While conducting the search around 12:40 p.m., law enforcement discovered a .22 rifle, one round of .22 ammunition, ledgers, large amounts of money and narcotics, and a large amount of suspected Xanax tablets.  Second Search Warrant Affidavit, RE 66-1, Page ID 329.  After the search began, law enforcement was

5

advised that approximately 30 grams of suspected heroin and approximately 16 grams of methamphetamine were located on Appellant at the jail.  Id.  Based upon the above additional information, law enforcement "ceased" the search and filed another search warrant affidavit seeking a warrant that would authorize a search for "controlled substances."  Id. at Page ID 327.  The second search warrant was granted that same day.  Second Search Warrant, RE 66-2, Page ID 332-33.  By the end of the search, law enforcement discovered $58,000.00 in cash, 700 grams of methamphetamine, and several thousand Xanax pills.  Day One Trial Transcript, RE 119, Page ID 937, Lines 23-25; *see* Day One Trial Transcript, RE 119, Page ID 953, Lines 8-10.

Ultimately, Appellant was indicted on four charges: 1) Unlawful distribution of 500 grams of more of methamphetamine; 2) unlawful distribution of methamphetamine; 3) Possession of a Firearm in Furtherance of Drug Trafficking; and, 4) Possession of a Firearm by a Convicted Felon.  Indictment, RE 1, Page ID 1-3.  Count 1 related to the 700 grams found at 4442 Hays Fork Lane.  Count 2 related to the methamphetamine found on Appellant's person at the Madison County Detention Center.  Count 3 involved the firearm in the Chevrolet Suburban.  Lastly, Count 4 related to the firearm in the vehicle and the .22 rifle found at 4442 Hays Fork Lane.

After a two-day trial, a jury convicted Appellant on all counts.  Verdict Form, RE 102, Page ID 770-71.  Appellant was sentenced to two-hundred and forty (240) months.  Final Judgment, RE 110, Page ID 804-10.  Appellant filed his Notice of Appeal on September 22, 2021.  Notice of Appeal, RE 111, Page ID 811-12.  This Brief followed.

## SUMMARY OF ARGUMENT

The Court must reverse the trial court's denial of both motions to suppress. In terms of the traffic stop, the AVIS readout stating "verify insurance" combined with Officer Salyer's complete lack of understanding of the AVIS system was insufficient to establish reasonable suspicion to conduct a traffic stop.  As for the search warrant, the affidavit failed to establish a sufficient nexus between the alleged ongoing criminal activity that occurred at the traffic stop, and alleged in the affidavit, to 4442 Hays Fork Lane.  Therefore, the Appellant moves this Court to reverse the trial court and the suppress all evidence from the traffic stop and the search of 4442 Hays Fork Lane.

## ARGUMENT

### I.    TRAFFIC STOP TO "VERIFY PROOF OF INSURANCE" NOT SUPPORTED BY REASONABLE SUSPICION

A. *Standard of Review*

A trial court's decision to suppress evidence is held to a "mixed" standard of review. *United States v. McCoy,* 905 F.3d 409,415 (6th Cir. 2018).  A district court's

findings of fact shall be overruled only if they are clearly erroneous. *Id.* However, a trial court's legal conclusion regarding whether the exclusionary rule applies is reviewed *de novo. Id.*

B. *Preservation Statement*

Appellant preserved this argument for appeal within his first Motion to Suppress. First Motion to Suppress, RE 21-1, Page ID 67.

C. *Argument*

"Whether a database notification that a vehicle's insurance status should be verified can constitute reasonable suspicion sufficient to support a vehicle stop has not been specifically addressed by the Sixth Circuit." Opinion and Order denying First Motion to Suppress, RE 40, Page ID 176. Other courts have considered this issue to varying degrees. Based upon the below cases, the government failed to show that Salyer's traffic stop to "verify insurance" was based upon reasonable and objective suspicion required by the Fourth Amendment.

*Gonzalez-Gilando v. State of Texas*, 306 S.W.3d 893 (Tx. App. 2010) was one of the first state cases to address this issue. In *Gonzalez-Gilando*, a law enforcement officer conducted a traffic stop that lead to the discovery of controlled substances in the vehicle. *Gonzalez-Gilando v. State of Texas*, 306 S.W.3d 893, 894-95 (Tx. App. 2010). Prior to the traffic stop, law enforcement conducted a database search that

8

found the vehicle was lawfully registered but "the information regarding insurance was unavailable." *Id.* at 894

Appellant filed a Motion to Suppress claiming that "unavailable" insurance information was not sufficient to conduct a traffic stop. *Id.* at 894. According to the Court, "the information garnered from the database did not provide the troopers basis to confirm whether or not such insurance existed . . . the circumstance meant the car could or could not have been covered." *Id.* More specifically, "the information obtained by the officers while pursuing those technological means was hardly suggestive of anything other than the unknown." *Id.* at 896. As a result, the Court of Appeals reversed holding that the State failed to "carry its burden" that the stop was legitimate. *Id.* at 897.

In *United States v. Esquivel-Rios,* a Kansas law enforcement officer ran the temporary tag for a Colorado vehicle. 725 F.3d. 1231, 1234 (10th Cir. 2013). The dispatcher responded "that's a negatory on record, no returning." *Id.* The dispatcher also stated that "Colorado temp tags usually don't return." *Id.* at 1235. Nonetheless, the officer stopped the vehicle and ultimately found one pound of methamphetamine inside the vehicle. *Id.; see also Id.* at 1236 ("We know that Trooper Dean relied *only* on the database report to support his stop.").

The appellant filed a motion to suppress claiming the traffic stop lacked reasonable suspicion. *Id.* at 1235. On appeal, the Court held that "reasonable

9

suspicion" is needed to conduct a lawful traffic stop, which requires the officer to possess a "particularized and objective" basis for thinking lawful activity is afoot. *Id.* at 1235-36. "The database undoubtedly qualifies as 'objective' evidence in the sense that it is independent from the trooper's beliefs or biases." *Id.* at 1236. "But it is a much harder question whether the computer's 'no return' report, taken in light of the dispatcher's comment, qualifies as 'particularized' evidence that supplied Trooper Dean some 'specific' reason to think that the minivan might be engaged in criminal activity." *Id.*

> "It's a hard question because at this point we know almost nothing about the database on which everything hinges. We don't know how it operates, why it 'usually' fails to yield information about Colorado temporary tags – or, for that matter, even its name. We don't know if officials systemically decline to place information about Colorado temporary tags into the database because of their fleeting 30-day life span. We don't know if instead information from Colorado takes, say two weeks (half the usual life span of a temporary tag) to reach the database. We don't know if Colorado temporary tags 'usually don't return' thanks to some other glitch altogether. Neither do we know whether a difference exists between a tag that doesn't 'return'

and one that isn't 'on file,' another term Trooper Dean reported

hearing before but also isn't exactly sure about."

    *Id.*

    Accordingly, the Court reversed and remanded for further proceedings

regarding the database. *Id.* at 1238. Specifically, the court held that the stop was

based solely on the database. *Id.* at 1237. As a result, the case hinged entirely on

the database's reliability. *Id.* at 1238. Therefore, given the lack of evidence

addressing the reliability of the database, "the district court's ruling cannot stand as

issued." *Id.*

    Lastly, the Kentucky Court of Appeals addressed this issue directly with the

AVIS database system in *Willoughby v. Commonwealth,* 2014 WL 92253 (Ky. App.

2014) (**Appendix 1**). In *Willoughby,* a Kentucky law enforcement officer entered

the license plate number for appellant's vehicle into the AVIS database. *Id.* at Page

1. The database displayed appellant's name and vehicle information, including the

statement "verify proof of insurance." *Id.* Based upon this information, the officer

initiated a traffic stop. *Id.* at Page 2. Ultimately, evidence was found in the vehicle

involving methamphetamine manufacturing. *Id.*

    At the suppression hearing, the officer testified that he routinely stopped

vehicles whose registration indicated "verify proof of insurance" and that "more

times than not, that person has either lapsed in payment, some the insurance

11

company cancelled them or the registered owner of that vehicle cancelled the insurance policy." *Id.* at Page 1. Additionally, the Kenton County Clerk testified that "several possible reasons exist for AVIS's indication that an individual's insurance requires verification: a lapse in coverage, cancellation of coverage, or a change in insurance provider of which the County Clerk or the Transportation Cabinet has not been notified." *Id.* "Because larger insurance companies upload their data to AVIS monthly, but smaller companies are not required to do so, valid insurance through a smaller carrier or the change from a larger carrier to a smaller carrier may cause AVIS to indicate that a driver's insurance requires verification." *Id.*

With these facts, the Court reviewed *Gonzalez-Gilando,* and *Esquivel-Rios* to determine the applicable law and how other courts, both state and federal, handled similar scenarios. *Id.* at Page 4-5. It held that the case involved a "a direct and imperative link between AVIS's ability (or inability) to accurately indicate illegal conduct and the existence of a reasonable and objective suspicion" of criminal conduct. *Id.* at Page 5. However, due to the clerk's testimony that there were several reasons that "verify proof of insurance" would include circumstances wherein the vehicle was lawfully insured, as well as the officer's testimony that "more times than not" a driver would be uninsured when AVIS noted to "verify insurance," the Court reversed the trial court's denial of the Motion to Suppress. *Id.* Most important to

the Court was "the lack of information in the record tending to answer this pivotal question" about AVIS's reliability.  *Id.*

The above cases support the conclusion that Salyer did not have reasonable suspicion to stop the Appellant.  At the suppression hearing, Salyer testified that he routinely used AVIS.  Hearing Transcript, RE 64, Page ID 256-57.  Based upon his experience, the database would produce three different results regarding insurance status: 1) yes; 2) verify insurance; and, 3) verify insurance – registration plate cancelled for failure to maintain insurance.  Id. at Page ID 258, Lines 12-14; *see also* Id. at Page ID 259, Lines 15-18.  According to Salyer, he had conducted approximately 100 traffic stops for "verify insurance," which was the basis in this case.  Id. at Page ID 259-60.  Of those 100 stops, "approximately 25 percent" were found to have insurance for the vehicle.  Id. at Page ID 260.

In terms of AVIS' reliability, Salyer provided no credible testimony.  As an officer for under three years, he had no direct experience with entering or maintaining AVIS.  Id. at Page ID 255-56.  The only affirmative comment Officer Salyer made regarding AVIS was that "he believe[d]" AVIS was updated by the Kentucky Department of Transportation.  Id. at Page ID 257.  When asked to elaborate, his testimony regarding who maintained the database and how information was entered into the database was incoherent and incomplete.  Id. at Page ID 258-59.

Nonetheless, Salyer stopped Appellant's vehicle after the AVIS database returned "verify insurance."  Id. at Page ID 263, Lines 19-22.  At that time, Salyer had no appreciable understanding of how the AVIS system worked, much less how information was entered into the system or how or by whom it was maintained. Additionally, according to Officer Salyer, the AVIS response for "verify insurance" was ambiguous in light of the other two more clearly defined responses that AVIS could have generated, which were "yes" and "verify insurance – registration plate cancelled for failure to maintain insurance."  In other words, "verify insurance" suggested nothing other than the unknown insurance status of the vehicle. Furthermore, based upon his own experience, "approximately 25 percent" of the time, individuals he stopped for "verify insurance" indeed had insurance at the time of the stop.

In other words, Salyer had a hunch that Appellant's vehicle was uninsured prior to the traffic stop.  However, a hunch is not enough under the Fourth Amendment.  Therefore, the trial court must be reversed and the evidence from the traffic stop suppressed.

## II.    SUFFICIENT NEXUS NOT PRESENT SUPPORTING SEARCH WARRANT FOR 4442 HAYS FORK LANE

A. _Standard of Review_

A trial court's decision to suppress evidence is held to a "mixed" standard of review.  _United States v. McCoy,_ 905 F.3d 409,415 (6th Cir. 2018).  A district court's

14

findings of fact shall be overruled only if they are clearly erroneous.  *Id.*  However, a trial court's legal conclusion regarding whether the exclusionary rule applies is reviewed *de novo.  Id.*

### B. *Preservation Statement*

Appellant preserved this argument for within his Second Motion to Suppress. Second Motion to Suppress, RE 60, Page ID 234.

### C. *Argument*

After the traffic stop, Salyer submitted an affidavit to search 4442 Hays Fork Lane, a location he claimed was Appellant's "residence."   First Search Warrant Affidavit, RE 60-1, Page ID 237-241.  Within the building, approximately 700 grams of methamphetamine was discovered.  Day One Trial Transcript, RE 119, Page ID 937, Lines 23-25.   At the trial court, the magistrate judge denied the Motion to Suppress finding that a sufficient nexus existed between Mr. Lawson's traffic stop and 4442 Hays Fork Lane.  Report and Recommended Order, RE 68, Page ID 358. Specifically, the magistrate judge found that:

> "the officer's complaints and the tipster's statement – even
>
> combined – would not cross the probable cause threshold.  But
>
> considering these pieces of evidence together regarding activity
>
> at the residence against the backdrop of the traffic stop
>
> circumstances, Lawson's criminal history, and Officer's Salyer's

averments concerning his training and experience working on
drug trafficking investigations, the affidavit established a
sufficient nexus between Lawson's ongoing drug activity and the
Hays Fork Lane Property."  Id. at Page ID 350-51.

The trial court adopted these findings and conclusions of law.  Opinion and
Order, RE 73, Page ID 388-391.  However, when each piece of evidence is unpacked
and evaluated, individually and collectively, a sufficient nexus is lacking between
the traffic stop and 4442 Hays Fork Lane justifying the search warrant.

### 1. ANONYMOUS TIPS TO POLICE

The only evidence of prior alleged drug trafficking activity within the affidavit
were involved anonymous, unverified tips to law enforcement.  First Search Warrant
Affidavit, RE 60-1, Page ID 239.  According to these tips, Appellant was "known to
transport 15 to 20 lbs of methamphetamine from Atlanta, Georgia to Kentucky."  Id.
Furthermore, Appellant allegedly kept significant amounts of methamphetamine and
cash in hidden compartments at 4442 Hays Fork Lane.  Id.  No additional verification
of these tips were described in the affidavit.  Id.

Anonymous tips are required to be independently collaborated by police for
probable cause consideration.  *United States v. Woosley,* 361 F.3d 924, 927 (6th Cir.
2004) ("[A]n affidavit that supplies little information concerning an informant's
reliability may support a finding of probable cause, under the totality of the

circumstances, if it includes *sufficient corroborating information*."); *see also United States v. Tuttle,* 200 F.3d 892, 894 (6th Cir. 2000) ("We have previously held that information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information."). Two factors are critical in determining the tip's weight within the probable cause analysis. *United States v. Sonagere,* 30 F.3d. 51, 53 (6th Cir. 1994). First, "an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand." *Id.* Second, "the extent to which the tip is corroborated by officer's own investigation." *Id.*

In regards to the anonymous tip to law enforcement, an explicit and detailed description of alleged wrongdoing is completely lacking. The unknown source alleges that Mr. Lawson transported large amounts of cash and drugs between Atlanta and Kentucky and hid illegal profits and drugs in "hidden compartments" within 4442 Hays Fork Lane and on the property. This is merely an allegation of general drug trafficking conduct. There are no details about when Mr. Lawson travelled between Atlanta and Kentucky to acquire the drugs. No mention of how many times he went or how he traveled, such as by commuter bus, private vehicle, or by some other method. Nothing about how he obtained the alleged controlled substances, from whom he acquired them, where he acquired the alleged drugs and

money, or any other details about the alleged drug activity. There are no details about the nature of the alleged "hidden compartments" or where on the property they were located except "within the home" and property. Lastly, there are no allegations that these events were witnessed firsthand by any informant.

As for the jailhouse confession, these too were mere general allegations. There no specific allegations of the alleged drug trafficking operation, the people involved with the alleged operation either in Kentucky or Atlanta, nor specific locations where the operation frequents aside from one of the largest cities in the United States. Additionally, even though the informant stated he saw the activity firsthand, the fact that the statement was made to gain favor with the law enforcement officer while in custody, combined with the lack of detail, renders the tip completely unreliable.

Additionally, these allegations are not sufficiently collaborated by the officer's own investigation. The only investigation this officer conducted was the traffic stop, which produced the money found in the vehicle, $23,000.00, and a utility bill for 4442 Hays Fork Lane. However, the mere possession of money does not collaborate drug trafficking at 4442 Hays Fork Lane, particularly on the scale alleged in the tip where Mr. Lawson alleged was running 15 to 20 pounds of methamphetamine between Atlanta and Kentucky. The utility bill does not close the gap either. As a result, the anonymous tips provided to law enforcement cannot form

a sufficient nexus between the traffic stop conduct and 4442 Hays Fork Lane. In fact, these tips should not have been considered when determining whether a sufficient nexus was present between the traffic stop and 4442 Hays Fork Lane per *Woosley.*

### 2. ONGOING CRIMINAL ACTIVITY

The magistrate judge found that "the officer's complaints and the tipsters statement – even combined – would not cross the probable cause threshold." Report and Recommended Order, RE 68, Page ID 350. But, "considering these pieces of evidence against the traffic stop and Mr. Lawson's criminal history, the magistrate judge found that the affidavit established a sufficient nexus between Lawson's ongoing drug activity and the Hays Fork Lane property." Id. However, per *Woosley,* those statements should never have been considered given the lack of corroborating evidence. As a result, this case is most analogous to *United States v. McPhearson* regarding whether a sufficient nexus existed between Appellant's "ongoing drug activity" and 4442 Hays Fork Lane.

In *McPhearson,* police went to 228 Shelby Street in Memphis, Tennessee to arrest appellant on an outstanding warrant. *United States v. McPhearson,* 269 F.3d 518, 520 (6th Cir. 2006). Police knocked on the door and appellant came outside the property where he was arrested. *Id.* A pat-down search incident to arrest found crack cocaine in appellant's pocket. *Id.*

After appellant denied police's consent search request, police applied for a search warrant. *Id.* at 521. The affidavit restated the above facts and added that "E-911 records" revealed that 228 Shelby Street was appellant's residence as the basis for the search. *Id.* The warrant was granted and cocaine and firearms were found in the property. *Id.*

The Court held that to establish a sufficient nexus "the affidavit must suggest 'that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime.'" *Id.* The affidavit in this case "did no more than state that McPhearson, who resided at 228 Shelby Street, was arrested for a non-drug offense with a quantity of crack cocaine on his person." *Id.*

Nonetheless, the government claimed this was sufficient to find that there was a fair probability that evidence of wrongdoing would be found in the property. *Id.* However, in all those cases, "the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes—namely, the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *Id.* Given the lack of such evidence, the Court held that there was an insufficient nexus to justify the search of 228 Shelby Street. *Id.*

In this case, the only evidence suggesting Appellant was involved in ongoing criminal activity were the anonymous tips the magistrate judge found could not support probable cause.  Without these statements, which amount of conjecture and rumor, the remaining evidence (money, is money, a gun, a utility bill to 4442 Hays Fork Lane, and one pill found during a traffic stop to establish "ongoing criminal activity" to 4442 Hays Fork Lane.  Simply, as stated in *McPhearson,* such evidence merely amounts to weak suspicion against Appellant for ongoing criminal conduct, not a nexus between said conduct and 4442 Hays Fork Lane.  Therefore, a sufficient nexus between "ongoing criminal activity" and 4442 Hays Fork Lane is not present, requiring the evidence found during the search to be suppressed.

### III.    <u>MINIMALLY SUFFICIENT NEXUS NOT PRESENT FOR GOOD FAITH EXCEPTION</u>

A. *<u>Standard of Review</u>*

A trial court's decision to suppress evidence is held to a "mixed" standard of review.  *United States v. McCoy,* 905 F.3d 409,415 (6th Cir. 2018).  A district court's findings of fact shall be overruled only if they are clearly erroneous.  *Id.*  However, a trial court's legal conclusion regarding whether the exclusionary rule applies is reviewed *de novo.  Id.*

B. *Preservation Statement*

Appellant preserved this argument for within his Reply in Support of his Second Motion to Suppress.  Reply in Support of Second Motion to Suppress, RE 66, Page ID 323-25.

C. *Argument*

The Magistrate Judge leaned heavily upon *United States v. Reed* to find that the good faith exception applied to this search.  Report and Recommended Order, RE 68, Page ID 358-60.  In *Reed,* the Court detailed the struggle with the sufficient nexus analysis between drug dealing and a dealer's home.  *United States v. Reed,* 993 F.3d. 441, 444 (6th Cir. 2021).  A "minimally sufficient" nexus is required to apply the good faith exception.  *Id.* at 451.  "Some connection, regardless of how remote it may have been – some modicum of evidence, however slight – between the criminal activity at issue and the place to be searched." *Id.*

Applying this standard, the Court held that the good faith exception saved the subject search due to several findings.  *Id.* at 451-53.  First, probable cause existed that the appellant was involved with recent drug transactions due to numerous controlled buys involving a reliable informant as well as the officer in question seeing appellant partake in suspicious activities.  *Id.* at 451.  Second, probable cause existed that appellant lived at the home in question.  *Id.*  Additionally, the reliable informant stated that the girlfriend and appellant were currently living together, that

the officer saw the vehicle in question at the subject property as well as watched the appellant live exit the property.  *Id.*

In this case, there is nowhere close to this amount of evidence establishing that Mr. Lawson was a drug dealer or lived at the property.  In regards to his drug dealer status, the only allegations within the affidavit supporting this conclusion were wholly unreliable tips, cash in vehicle, and pending charges in which Mr. Lawson enjoys the presumption of innocence.  There were no controlled buys, personal observations of suspicious activity related to drug activity referenced in *Reed,* or reliable informant tips.

As for the conclusion that Mr. Lawson lived at the property, the only evidence contained in the affidavit supporting this conclusion was the utility bill and the fact that the vehicle in question was registered to 4442 Hays Fork Lane.  First Search Warrant Affidavit, RE 60-1, Page ID 239.  However, to be clear, the affidavit did not state that the vehicle was registered to Mr. Lawson, only that it was registered to the address in question.  Id.  There are no allegations that law enforcement saw Mr. Lawson enter or exit the property, that Mr. Lawson admitted that the location was his residence, or any other evidence establishing that Mr. Lawson was using this property as his residence.  In fact, given the citation in this matter, law enforcement knew that this property was not his address based upon his operator's license.  Citation, RE 60-2, Page ID 242.  Specifically, the citation reads that Mr. Lawson's

23

address was in Lexington, Kentucky, not 4442 Hays Fork Lane, Richmond, Kentucky. As a result, law enforcement knew that probable cause was lacking that Mr. Lawson resided at 4442 Hays Fork Lane.

Moving back to *Reed,* the Court held that the law enforcement officer in question could reasonably conclude that the appellant was involved in "a large, ongoing drug trafficking operation." 993 F.3d. at 451. In this case, Officer Salyer could not reasonably conclude Mr. Lawson was involved in a "large scale, ongoing trafficking operation." The allegations addressing this issue, again, are the cash, unreliable tips, and Mr. Lawson's pending charges wherein he enjoys the presumption of innocence. However, in regards the cash, even though $23,000.00 is a significant amount of money, this amount does not constitute an amount that would be considered a byproduct of a "large scale" drug trafficking operation. The unreliable tips, as previously discussed, clearly does not lead a reasonable officer to conclude that Mr. Lawson is involved with an ongoing, large scale drug trafficking operation.

Bottom line, *Reed* does not support application of the good faith exception. A deep dive into *Reed* shows that a significant amount more evidence was present supporting the good faith exception that is lacking here. Therefore, the good faith exception should not apply and the evidence found at 4442 Hays Fork Lane should be suppressed.

## CONCLUSION

The traffic stop lacked reasonable suspicion.  The search warrant affidavit failed to establish a sufficient nexus between alleged ongoing criminal activity and the place to be searched, 4442 Hays Fork Lane.  Therefore, this Court must reverse the trial court's denial of Appellant's two Motion's to Suppress and remand with Orders to the trial court to exclude all evidence obtained from the traffic stop and the search of 4442 Hays Fork Lane.

Respectfully submitted,

*/s/ Philip C. Lawson, Esq.*
TRUE GUARNIERI AYER, LLP
124 Clinton Street
Frankfort, Kentucky 40601
Telephone:   (502) 605-9900
Fax:            (502) 605-9901
Email:         plawson@truelawky.com
*Counsel for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed.R.App. P. 32(a)(7)(B) because:

   [x]    this brief contains <u>5,321</u> words, excluding the parts of the brief exempted by Fed. R.App.P. 32(a)(7)(B)(iii), or

   []    this brief uses a monospaced typeface and contains ‹state the number of› lines of text, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

   [x]    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman, or

   []    this brief has been prepared in a monospaced typeface using ‹state name and version of word processing program› with ‹state number of characters per inch and name of type style.

Date: December 7, 2021.

Respectfully submitted,

*/s/ Philip C. Lawson, Esq.*
TRUE GUARNIERI AYER, LLP
124 Clinton Street
Frankfort, Kentucky 40601
Telephone:   (502) 605-9900
Fax:           (502) 605-9901
Email:        plawson@truelawky.com
*Counsel for Defendant-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Brief for Defendant-Appellant John William Lawson has been served this 15th day of December, 2021, by the Court's electronic filing service on all counsel of record.

*/s/ Philip C. Lawson, Esq.*
ATTORNEY FOR APPELLANT

## DESIGNATION OF RELEVANT DISTRICT COURT
## DOCUMENTS WITH PAGE ID # RANGE

Indictment, RE 1, Page ID 1-4

First Motion to Suppress, RE 21, Page ID 62-93

First Recommendation and Proposed Order, RE 31, Page ID 121-136

First Opinion and Order, RE 35, Page ID 147-153

Second Motion to Suppress, RE 60, Page ID 230-247

First Suppression Hearing Transcript, RE 64, Page ID 252-82

Reply in Support of Second Motion to Suppress, RE 66, Page ID 321-34

Second Recommendation and Proposed Order, RE 68, Page ID 338-61

Appellant Written Objections to Second Recommendation and Proposed Order, RE 70, Page ID 363-72

Second Opinion and Order, RE 73, Page ID 380-393

Salyer Day One Trial Transcript, RE 94, Page ID 543-630

Verdict Form, RE 102, Page ID # 770-71.

Final Judgment, RE 110, Page ID # 804-810.

Notice of Appeal, RE 111, Page ID # 811-12

Day One Trial Transcript, RE 119, Page ID 862-984

Day Two Trial Testimony, RE 120, Page ID 985-1276

## APPENDIX

**Appendix 1:** *Willoughby v. Commonwealth,* 2014 WL 92253 (Ky. App. 2014)

# APPENDIX 1

🚩 KeyCite Red Flag - Severe Negative Treatment

Opinion Not to be Published

2014 WL 92253
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST
RCP Rule 76.28(4) before citing.

Court of Appeals of Kentucky.

James WILLOUGHBY, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–CA–000776–MR.
|
Jan. 10, 2014.
|
Rehearing Denied March 4, 2014.
|
Discretionary review denied; ordered
not to be published Oct. 15, 2014.

**Synopsis**

**Background:** Defendant was convicted in the Kenton Circuit Court, Gregory M. Bartlett, J., of e manufacturing methamphetamine and possession of a controlled substance. Defendant appealed.

**Holdings:** The Court of Appeals, Maze, J., held that:

as a matter of apparent first impression, evidence in record was insufficient for appellate court to determine whether state's automated vehicle information system (AVIS), which signaled to police officer to verify proof of insurance for defendant's vehicle, was sufficiently reliable to support reasonable suspicion for traffic stop; but

traffic stop lasting 20 to 30 minutes was reasonable in duration; and

defendant was under arrest at time police officer searched defendant's vehicle, and thus search was a permissible search incident to arrest.

Affirmed in part, reversed in part, and remanded.

**Attorneys and Law Firms**

Brandon Neil Jewell, Frankfort, KY, for appellant.

Jeffrey A. Cross, Frankfort, KY, for appellee.

Before CLAYTON, DIXON and MAZE, Judges.

*OPINION*

MAZE, Judge:

**\*1** Appellant, James Willoughby, appeals from the Kenton Circuit Court's final judgment of conviction and sentence entered following his trial for manufacturing methamphetamine and possession of a controlled substance. Specifically, Willoughby alleges that the trial court erred in failing to suppress evidence used against him at trial, which he contends was acquired illegally. Because the trial court's decision was based on testimony not in the record, on the limited issue of the initial stop, we reverse the denial of the motion to suppress. We, like the trial court, lack sufficient information regarding the reliability of the information upon which the officer relied in stopping Willoughby; therefore, we remand that matter to the trial court for a new evidentiary hearing and findings. Finally, finding no error as to Willoughby's other arguments, we otherwise affirm the trial court's judgment.

## Background

On January 20, 2011, a Kenton County grand jury indicted Willoughby for one count of manufacturing methamphetamine, first-offense, and one count of first-degree possession of a controlled substance. The same indictment charged Willoughby's codefendant, Sheena Martin, with unlawful distribution of a methamphetamine precursor. On March 28 of the same year, Willoughby's appointed counsel filed a Motion to Suppress evidence against Willoughby. The trial court held a hearing on this motion on April 1, during which the following facts came to light.

On November 18, 2010, while on routine patrol, Officer Scott Hardcorn of the Kenton County Police Department (KCPD) encountered a 1997 Jeep Cherokee. Officer Hardcorn entered the vehicle's license plate number into his Mobile Data Terminal (MDT) which was linked to, among other databases,

# APPENDIX 1

Kentucky's automated vehicle information system (AVIS). This database maintains title, registration, and insurance information for all vehicles, boats and trailers registered in Kentucky. Upon entry of the vehicle's license plate number, AVIS displayed Willoughby's name and vehicle information, including the statement "verify proof of insurance." [1] Officer Hardcorn testified that he routinely stopped vehicles whose registration information shows this indication, and that "more times than not, that person has either lapsed in payment, so the insurance company canceled them or the registered owner of that vehicle canceled the insurance policy themself [*sic* ]."

According to the County Clerk, several possible reasons exist for AVIS's indication that an individual's insurance requires verification: a lapse in coverage, cancellation of coverage, or a change in insurance provider of which the County Clerk or the Transportation Cabinet has not been notified. Because larger insurance companies upload their data to AVIS monthly, but smaller companies are not required to do so, valid insurance through a smaller carrier or the change from a larger carrier to a smaller carrier may cause AVIS to indicate that a driver's insurance requires verification.

 **\*2**  Based on the indication AVIS provided regarding the vehicle in front of him, Officer Hardcorn initiated a traffic stop. Upon approaching the vehicle, Officer Hardcorn requested Willoughby's insurance card and observed a female passenger he later identified as Sheena Martin. While Willoughby searched for his insurance card, Officer Hardcorn shone his flashlight around the car, through the tinted back window and into the backseat, where he observed an electric coffee bean grinder. After five minutes elapsed, Officer Hardcorn asked Willoughby to continue looking for his insurance card and returned to his cruiser where he called dispatch to request warrant and other information. He also contacted Sergeant Benton of KCPD and requested that he check a database of recent pseudoephedrine purchases and purchasers in Kentucky.

Approximately twenty minutes after the traffic stop began, Sergeant Benton arrived on the scene and informed Officer Hardcorn that his search of the database showed that both Willoughby and Martin had purchased pseudoephedrine earlier that day; Martin purchased only minutes before they were stopped. Upon learning this, Officer Hardcorn returned to Willoughby's vehicle and questioned him regarding pseudoephedrine purchases. Willoughby initially told the officer that he had not bought any pseudoephedrine and that he was not "into that anymore."

Officer Hardcorn asked Willoughby to exit the vehicle and informed him he was being given a warning for driving without proof of insurance. [2] According to Officer Hardcorn, he decided to issue only a warning "to build a rapport" with Willoughby in hopes of gaining information on other drug traffickers. Officer Hardcorn, with the assistance of Sergeant Benton, conducted a pat down of Willoughby which yielded two small bags of white powder, one of which was found tucked down his pants and between his buttocks. Officer Hardcorn then handcuffed Willoughby. Officers asked Willoughby for consent to search the vehicle [3] and placed him in the back of a police cruiser. After reading Willoughby his *Miranda* [4] rights, Officer Hardcorn repeatedly informed him that he was not under arrest.

In Willoughby's vehicle, officers found an electric coffee bean grinder, store brand cold medicine containing pseudoephedrine, and plastic tubing with white residue on it. Following these discoveries, and after field tests on the white powder found on Willoughby's person revealed it to be methamphetamine, officers formally arrested Willoughby.

Prior to trial, Willoughby sought suppression of the evidence seized from his person and from his vehicle during the traffic stop, claiming, *inter alia,* that Officer Hardcorn did not possess the requisite level of suspicion to initiate the traffic stop. At the hearing on this motion, Officer Hardcorn testified and the court viewed the in-car video of the traffic stop. [5] The Kenton County Clerk testified regarding AVIS and Willoughby's insurance agent testified regarding his insurance status on the date of the traffic stop.

 **\*3**  Following the hearing and submission of memoranda, the trial court denied Willoughby's motion to suppress. In its order, the trial court stated that Officer Hardcorn "testified that in his experience, 95% of the individuals that he has stopped in order to verify insurance do not have insurance in effect." The trial court went on to conclude that Officer Hardcorn had sufficient suspicion and "certainly had the legal authority to investigate further by stopping the vehicle for investigation." The trial court refuted Willoughby's other claims, including the length of his detention, finding that "[t]he 20–minute detention of the Defendant's vehicle for investigation of the status of his insurance was not reasonable."

Following a trial, a jury convicted Willoughby of both charges and sentenced him to a total of ten years' imprisonment. Willoughby now appeals his conviction and sentence.

### Standard of Review

On appeal, Willoughby alleges that the trial court erroneously denied his motion to suppress. In doing so, Willoughby makes four arguments: 1) Officer Hardcorn did not have sufficient cause to stop him based solely on AVIS's indication regarding insurance; 2) Officer Hardcorn accessed the AVIS database in contravention of Kentucky law; 3) his detention was unreasonably and unnecessarily long given the initial purpose of the stop; and 4) the warrantless search of his vehicle was unlawful.

Our standard of review in such cases is well-established.

> In reviewing a trial court's ruling on a motion to suppress evidence, the reviewing court must first determine whether the trial court's findings of fact are supported by substantial evidence. If so, those findings are conclusive. The reviewing court then must conduct a *de novo* review of the trial court's application of the law to those facts.

*Epps v. Commonwealth,* 295 S.W.3d 807, 809 (Ky.2009) (citations omitted). With this standard in mind, we turn to Willoughby's arguments on appeal.

### Analysis

The United States Supreme Court long ago ruled that investigatory stops, including traffic stops, must be justified by "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *U.S. v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citing to *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–1879, 20 L.Ed.2d 889 (1968), *inter alia* ). Since then, "[c]ourts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize

police to stop a person ... [t]erms like 'articulable reasons' and 'founded suspicion'...." *Id.* In Kentucky, "an officer conducting an investigatory stop must have a reasonable suspicion, based on objective and articulable facts, that criminal activity has occurred, is occurring, or is about to occur." *Commonwealth v. Morgan,* 248 S.W.3d 538, 540 (Ky.2008) (citing *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *Cortez, supra,* at 417, 101 S.Ct. at 695; *Terry, supra,* at 30–31, 88 S.Ct. at 1885).

### I. Reasonableness of the Initial Traffic Stop

**\*4** Though we have no doubt that individuals are stopped every day on the sole basis of verifying their insurance coverage, this case presents what we believe to be an issue of first impression in this Commonwealth: Does an indication from AVIS, or other similar database, that an individual's insurance "requires verification" provide law enforcement with a reasonable and objective suspicion sufficient to conduct an investigatory traffic stop? The only state and federal jurisdictions that have taken up this issue with any consistency are within the 10th Circuit. We look first to those holdings for possible guidance.

### A. Precedent From Other Jurisdictions

In companion cases rendered by the Texas Court of Appeals in 2010, officers stopped two vehicles in separate traffic stops on a highway known in the area as a common route for drug trafficking. *See* *Contraras v. State,* 309 S.W.3d 168 (Tex.App.2010), and *Gonzalez–Gilando v. State,* 306 S.W.3d 893 (Tex.App.2010). Reasons officers cited for the traffic stops included the incongruity of the values of the vehicles and age of their occupants, as well as the nervous and evasive body language of the occupants (avoiding eye contact and driving below the speed limit). In both cases, when officers entered the vehicles' license information into their MDTs, the insurance information was listed as "unavailable." Nothing else in the vehicles' information indicated anything out of the ordinary. Officers' subsequent stop of the vehicles yielded evidence of drug activity. On appeal, the state Court of Appeals considered whether the "unavailable" indications constituted sufficient suspicion to justify the traffic stops.

In both cases, the court's analysis centered on the reliability of such an indication; and in both cases, the court concluded that an indication of "unavailable," without more, "did not give rise to a reasonable suspicion that appellant[s

were] engaged, had engaged, or [were] about to engage in criminal conduct." *Contraras,* 309 S.W.3d at 171 (citing *Gonzalez–Gilando,* 306 S.W.3d at 895). In *Contraras,* this was despite the fact that the state's insurance database was required to meet a "95% match rate." In *Gonzalez–Gilando,* the court ultimately concluded that an indication of "unavailable" "was hardly suggestive of anything other than the unknown." 306 S.W.3d at 896.

The 10th Circuit Court of Appeals has twice taken up the same issue. In *United States v. Cortez–Galaviz,* 495 F.3d 1203 (10th Cir.2007), the Court found that an indication of insurance information "not found" was sufficient grounds to stop an individual later found to be engaged in illegal conduct. Specifically, the Court stated that such an indication "contained no information suggesting that the owner ... had insured it." *Cortez-Galaviz,* 495 F.3d at 1206. "[T]he 'not found' response ... did not as definitively indicate criminal activity as a 'no' response, but neither did it equate to an exculpatory 'yes'...." *Id.*

 **\*5**  By contrast, the same court recently held that, where an officer relies only on a database's "no return" [6] of registration information, the reliability of that database is key to determining whether the officer had sufficient grounds to conduct a traffic stop. *United States v. Esquivel–Rios,* 725 F.3d 1231, 1238 (10th Cir.2013). The Court pointed out that, in *Cortez–Galaviz,* it had placed the onus of establishing the database's lack of reliability on the defendant. Nevertheless, the Court decided that a trial court must consider, and hear proof regarding, "how (un)reliable the database is" before determining whether sufficient suspicion existed. *Id.* Accordingly, the Court remanded the case to the trial court for further proof and reconsideration of suppression in light of that proof.

### B. Reliability of the AVIS Database

The decisions to which we cite above, as well as our own consideration of the broader Fourth Amendment question presented in this case, reveal a direct and imperative link between AVIS's ability (or inability) to accurately indicate illegal conduct and the existence of a reasonable and objective suspicion of such conduct. In the present case, the Kenton County Clerk testified at the suppression hearing that an indication from AVIS of "verify proof of insurance" could appear for several reasons, including circumstances under which the vehicle is legally insured. She provided no information as to how often AVIS displays inaccurate information or how often an indication that a person's proof of insurance requires verification is actually attributable to illegal conduct. To this, Officer Hardcorn was only able to add that, in his experience, "more times than not," such individuals were driving without insurance.

In its order, the trial court properly recognized the significant role AVIS's reliability plays in determining the reasonableness of Officer Hardcorn's suspicions. However, we are troubled by the trial court's statement that Officer Hardcorn's testimony attributed a 95% accuracy rate to AVIS. Had this been the case, ours might be a simpler decision. However, Officer Hardcorn never said, or even intimated, this fact. Hence, there is a lack of substantial evidence supporting the trial court's only finding regarding the crucial question of AVIS's reliability.

Like the Court in *Esquivel–Rios,* we are confronted with the question: what level of reliability must a database reach to induce a reasonable and objective suspicion and thereby pass constitutional muster? 95 percent? 75 percent? 51 percent? Is "more times than not" sufficient? We simply do not know enough to answer these questions. Like the Court in *Esquivel–Rios,* the lack of information in the record tending to answer this pivotal question compels us to remand the issue to the trial court for further proof concerning AVIS's reliability. While we could elect to make a sweeping decision as to the reasonableness of officers' reliance on the AVIS database, we are unwilling, without more information, to render a judgment which would profoundly affect both the individual's right to be left alone and law enforcement's ability to enforce the law.

 **\*6**  Instead, on remand, the trial court shall hear and consider further evidence concerning AVIS, including, but not limited to: what the various indications provided by AVIS mean, both in theory and in practice; whether the database's "match rate" can be definitively determined; and how (in)frequently an indication of "verify proof of insurance" indicates that a vehicle is uninsured. We, like the few courts who have taken up this issue, refuse to announce a threshold value or percentage which, once crossed, would bestow "reasonable and objective" status upon an officer's suspicions. Instead, we leave to the sound, and soon-to-be more informed, judgment of the trial court the determination of whether, under these facts, AVIS was sufficiently accurate and reliable so as to raise an objectively reasonable suspicion of criminal conduct.

## II. Legality of Access to AVIS

Willoughby next argues that Officer Hardcorn accessed AVIS in contravention of Kentucky law. He points specifically to Kentucky Revised Statutes (KRS) 186A.040, which provides, in part,

> (b) Notwithstanding any other provision of law, information obtained by the [Department of Vehicle Registration] ... shall not be disclosed, used, sold, accessed, utilized in any manner, or released by the department to any person, corporation, or state and local agency, except in response to a specific individual request for the information authorized pursuant to the federal Driver's Privacy Protection Act.... The department shall institute measures to ensure that only authorized persons are permitted to access the information for the purposes specified by this section.

KRS 186A.040(3)(b) (internal citation omitted). Willoughby contends that the KCPD and Officer Hardcorn were prohibited by the statute from accessing his insurance information. We disagree.

The Driver's Privacy Protection Act (hereinafter "the Act"), to which KRS 186A.040 alludes, prevents the unauthorized disclosure of certain personal information. 18 United States Code (U.S.C.) § 2721 et seq. The Act defines "personal information" as that which "identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). The statute, as well as its use and definition of "personal information," lead us to conclude that, though certain information which appeared on Officer Hardcorn's screen may fit this description, the indication regarding Willoughby's insurance status was expressly excluded.

More persuasively, Officer Hardcorn was not a person from whom the Act intended such information to be withheld. The

Act provides that such information may be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). KCPD is such an agency. Consequently, we are satisfied that Officer Hardcorn's access to AVIS complied with both state and federal law.

## III. Length of the Traffic Stop

**\*7** Willoughby also asserts that his detention was unreasonably and unnecessarily long in duration for purposes of verifying his insurance. However, given the circumstances and the manner in which Officer Hardcorn conducted the stop, we find the duration of the stop to be reasonable.

A person is detained for purposes of the Fourth Amendment when his vehicle is stopped and the person operating the vehicle reasonably believes he is not free to terminate the encounter between himself and the officer. See Epps v. Commonwealth, 295 S.W.3d at 809 (citing to Brendlin v. California, 551 U.S. 249, 255, 127 S.Ct. 2400, 2406, 168 L.Ed.2d 132 (2007) (internal quotations omitted)). Hence, seizure of an individual during a traffic stop must comply with certain constitutional assurances, including that the person will be seized "no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).

Willoughby cites to several cases which address the duration of traffic stops. He first cites to Illinois v. Caballes, which held,

> a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.

543 U.S. 405, 407, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005). Nevertheless, the *Caballes* Court found the ten-minute traffic stop and subsequent drug dog sweep to be "entirely justified." *Id.* at 408, 125 S.Ct. at 837.

Similarly, in *Johnson v. Commonwealth,* 179 S.W.3d 882 (Ky.App.2005), this Court addressed a similar situation to that in *Caballes.* In *Johnson,* the officer asked the suspect to step out of his car and initiated a drug dog search within seven minutes after the initial stop for a traffic violation. As this Court noted, "[a]fter the dog alerted to the presence of narcotics, the officers undoubtedly had probable cause to search the vehicle." *Johnson,* 179 S.W.3d at 885–86.

Willoughby also points to a Kentucky case, *Epps v. Commonwealth, supra,* in which a vehicle was stopped for failure to illuminate its license plate. The stop escalated based on the driver's known history of drug-related activity and the officer's observation that the driver seemed impaired. When the driver refused to grant officers consent to search the vehicle, officers brought a drug dog to the scene. The process of transporting the drug dog and searching the vehicle took thirty to forty minutes. All told, the officer detained the driver and the passengers for ninety minutes before formally arresting him. Our Supreme Court found this to be excessive and unconstitutional.

Willoughby complains that, like in *Epps,* Officer Hardcorn did not have reasonable suspicion to detain him longer than necessary to issue a warning or a citation based on the initially suspected offense of driving without insurance. Willoughby argues that Officer Hardcorn detained him for twenty minutes with no more reason than his knowledge of a past encounter with him and the observation of a coffee bean grinder in the back seat. He contends these were insufficient to permit further detention. We disagree.

**\*8** By Willoughby's own admission, within the first twenty minutes of Willoughby's detention, Officer Hardcorn observed the occupants of the vehicle; he observed a coffee bean grinder in the back seat of the vehicle; and he made inquiries on Willoughby and Martin, one of which informed him that both had purchased pseudoephedrine that very day. Immediately following this twenty-minute timeframe, Officer Hardcorn's questioning of Willoughby regarding recent pseudoephedrine purchases yielded an answer which the officer knew was a lie.

Given Officer Hardcorn's knowledge of all of these facts, we find that it was entirely reasonable for Officer Hardcorn to detain Willoughby for between twenty and thirty minutes before detaining him further and giving him a warning for failing to show proof of insurance. During that time, Officer Hardcorn rapidly became aware of a number of facts which together gave rise to a reasonable suspicion which justified further detention of Willoughby. As in *Johnson,* the purpose of the stop—to cite or warn Willoughby for failure to provide proof of insurance—had not been completed before these additional facts came to light. Therefore, upon the discovery of these facts, additional suspicion arose which justified additional detention.

More importantly, also like *Johnson,* we find that Officer Hardcorn's decision to conduct a "focused and immediate" investigation based on this additional information "did not prolong the stop to any unreasonable extent." *Johnson, supra,* at 886. After conversing with Willoughby, after recognizing Willoughby from a previous encounter, after observing the coffee bean grinder in plain view—all of which took only five minutes—Officer Hardcorn returned to his vehicle, while Willoughby looked for his proof of insurance, and immediately set about gathering additional information, a process which took approximately fifteen additional minutes and yielded further, reasonable suspicion that criminal activity was afoot. This was not unreasonable.

**IV. The Warrantless Search of Willoughby's Vehicle**

Willoughby's final argument pertains to the search of his vehicle which followed his detention and the search of his person. He argues that officers conducted a warrantless and unreasonable search of his vehicle. Once again, we disagree.

"It is well-established that warrantless searches of an individual's person are *per se* unreasonable, but for a few specifically well-delineated exceptions." [7] *Frazier v. Commonwealth,* 406 S.W.3d 448, 457 (Ky.2013) (citing to *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One such exception is the search incident to arrest, which allows an officer to conduct a warrantless post-arrest search of an arrestee's person as well as all areas within the arrestee's immediate control. *Id.* at 457–58 (citing to *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). This exception is derived from "interests in officer safety and evidence preservation that are typically implicated in arrest

# APPENDIX 1

situations." *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (citation omitted).

**\*9** Willoughby relies heavily upon the United States Supreme Court's 2009 decision in *Arizona v. Gant* for his argument that the search incident to arrest exception to the warrant requirement did not apply in the present case. In *Gant,* the Supreme Court clarified that this exception "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S at 343, 129 S.Ct at 1719. However, the Court went on to hold that, though prior precedent did not provide for it, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* (internal quotations and citation omitted). The Court in *Gant* also reaffirmed its decision in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), which held that if probable cause exists that the vehicle contains evidence of criminal activity, officers may search any area of the vehicle in which that evidence might possibly be found.

Willoughby also points to the Kentucky Supreme Court's decision in *Rose v. Commonwealth,* 322 S.W.3d 76 (Ky.2010), which took the decision in *Gant* into consideration. However, *Rose* acknowledges *Gant's* provision for the reasonable belief that a vehicle contains evidence pertinent to the crime of arrest. Willoughby responds to this by stating that, at the time his vehicle was searched, he was not under arrest. This argument is unpersuasive.

 "The test [of when an arrest has been effected] is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Commonwealth v. Lucas,* 195 S.W.3d 403, 405 (Ky.2006). Indeed, Officer Hardcorn testified at the suppression hearing that at the time the vehicle was searched, he repeatedly told Willoughby he was not under arrest. The stated reason for this was that belief that if Willoughby did not know he was under arrest, he might provide useful information regarding other drug activity. However, Willoughby was handcuffed, placed in the back of the police cruiser and read his *Miranda* rights prior to the search of his vehicle. This constitutes substantial evidence that a reasonable person in Willoughby's position was not free to leave. In other words, regardless of Officer Hardcorn's repeated assurances, Willoughby was under arrest.

Even assuming *arguendo* that the "search incident to arrest" exception does not apply, the Commonwealth is correct in asserting that another well-established exception does. Officers may search a vehicle without a warrant "when there is probable cause to believe [the] automobile contains evidence of criminal activity and the automobile is readily mobile." *Chavies v. Commonwealth,* 354 S.W.3d 103, 110–11 (Ky.2011) (citing to *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996)). Known as the "automobile exception" to the warrant requirement, this rule permits a warrantless search even when the vehicle's owners or occupants have been detained. *Id.* (citing to *Ross, supra; Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984)).

**\*10** The very fact that Willoughby's vehicle was readily mobile, combined with Officer Hardcorn's observation of the vehicle's interior and his knowledge that its occupants had recently purchased pseudoephedrine, implicates the automobile exception in the present case. Therefore, we find that the officers' search of Willoughby's vehicle, though warrantless, was reasonable pursuant to at least one exception to the Fourth Amendment's warrant requirement.

### Conclusion

Because the record provided insufficient information regarding the reliability of AVIS, the trial court was without substantial evidence to support its finding on that crucial issue. Therefore, we remand that matter to the trial court for additional evidence and findings as to whether the database's indication was sufficient to justify the traffic stop. If the trial court answers the latter question in the negative, the trial court shall vacate Willoughby's conviction and sentence because they would then be based on evidence procured pursuant to an unlawful stop.

On all other matters, the judgment of the Kenton Circuit Court is affirmed.

ALL CONCUR.

### All Citations

Not Reported in S.W.3d, 2014 WL 92253

Willoughby v. Com., Not Reported in S.W.3d (2014)

2014 WL 92253

## Footnotes

1    As insurance information appears on an MDT, there are at least two possible indications: "yes" and "verify proof of insurance." According to Officer Hardcorn, there may be a "no" indication, but he has never seen it.

2    Though Willoughby was not able to provide proof of insurance during the traffic stop, he was legally insured at that time.

3    The Commonwealth contends, and Officer Hardcorn testified, that Willoughby consented to the search of his vehicle. However, Willoughby does not concede this fact and the video record of the traffic stop is literally silent.

4    *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5    Unfortunately, as the Commonwealth notes in its brief, the video in the record on appeal lacks audio, despite the fact that the video contained sound when it was played at the suppression hearing. However, to the extent that the events of the traffic stop are confirmed by the video, we include them in the above facts. Those events not confirmed by the soundless video, such as statements made by Willoughby during the traffic stop, are included above to the extent that they are undisputed by the parties.

6    The testimony provided to the trial court in that case, which concerned Colorado's vehicle registration database, provided little, if any, information regarding the database's reliability and the exact meaning of its various indications. The undeveloped record left the Court to conclude that a "no return" could be caused either by "unlawful conduct by the driver ... [or] some sort of bureaucratic bumbling...." *Esquivel–Rios,* 725 F.3d at 1237.

7    Because we are without the audio of the traffic stop, we are unable to verify whether Willoughby actually consented to the search of his vehicle, which would clearly serve as an exception to the warrant requirement. Though there is testimony that Willoughby did consent, and while we highly doubt a search would have ensued had he not, because we are without this crucial portion of the record, we do not hinge our decision regarding the reasonableness of the search upon the question of consent.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.    8